**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| United States Fire Ins. Co., | NO. C 09-02388 JW |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM** |
| v. | |
| Vesta Strategies, LLC, | |
| Defendant. | |

Thomas Dillon,

    Counter-Claimant,

v.

United States Fire Ins. Co.,

    Counter-Defendant.

## I. INTRODUCTION

United States Fire Insurance Company ("Plaintiff") brings this diversity action against Vesta Strategies, LLC ("Defendant" or "Vesta") seeking rescission and declaratory relief. Plaintiff alleges that Defendant accepted Plaintiff's rescission and seeks a judgment confirming its validity. On October 29, 2010, Thomas Dillon ("Counter-Claimant"), acting as receiver for Defendant, filed a Counterclaim against Plaintiff alleging causes of action for declaratory judgment, breach of contract and fraudulent conveyance.

Presently before the Court is Plaintiff's Motion to Dismiss the Counterclaim.[1] The Court conducted a hearing on June 20, 2011. Based on the papers submitted to date and oral argument, the Court DENIES Plaintiff's Motion to Dismiss.

## II. BACKGROUND

In a Counterclaim[2] filed on October 29, 2010, Counter-Claimant alleges as follows:

Vesta acted as a qualified intermediary under Section 1031 of the Internal Revenue Code.[3] (Counterclaim ¶ 26.) John Terzakis ("Terzakis") and Robert Estupinian ("Estupinian") owned Vesta. (Id. ¶¶ 9, 11.) Peter Ye ("Ye") acted as Vice President of Operations at Vesta and managed the bank accounts where exchange funds were deposited. (Id. ¶ 14.) The Court appointed Counter-Claimant as receiver for Vesta on December 16, 2009. (Id. ¶ 6.)

Plaintiff issued two commercial crime policies to Vesta: (1) a policy that ran from August 19, 2005 to August 19, 2006; and (2) a policy that ran from July 19, 2006 to July 19, 2007 (collectively "the Policies").[4] (Counterclaim ¶ 8.) The Policies contain largely identical terms. The Policies state that "[w]e[5] will pay for loss of or damage to 'money',

---

[1] (United States Fire Insurance Company's Notice of Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted, hereafter, "Motion," Docket Item No. 201.)

[2] (Answer to First Amended Complaint Against Vesta Strategies, LLC ("Vesta") and Vesta's Counterclaim for: 1. Declaratory Judgment; 2. Breach of Contracts; 3. Set Aside of Fraudulent Conveyances, hereafter, "Counterclaim," Docket Item No. 194.)

[3] Section 1031 permits owners of investment property to defer capital gains taxes that would otherwise be due upon sale of the property by reinvesting the proceeds in substitute investment property. (Counterclaim ¶ 21.) In a typical Section 1031 exchange, an exchanger sells a parcel of real property and the funds are held in trust by a qualified intermediary while substitute investment property is located and purchased. (Id. ¶ 22.)

[4] The Policies are attached to Plaintiff's First Amended Complaint filed on June 10, 2009. (First Amended Complaint for Rescission and Declaratory Relief, hereafter, "FAC," Docket Item No. 5, Exs. A, B.)

[5] The Policies state that "'we,' 'us' and 'our' refer to the Company providing the insurance," i.e., Plaintiff. (FAC, Ex. A at 3, Ex. B at 3.) The Policies state that "'you' and 'your' refer to the Named Insured shown in the Declarations," i.e., Defendant and Counter-Claimant. (Id.)

'securities' and 'other property' resulting directly from 'theft' committed by an 'employee', whether identified or not, acting alone or in collusion with other persons." (FAC, Ex. A at 4, Ex. B at 4.) The Policies exclude from coverage "[l]oss resulting from 'theft' or any other dishonest act committed by: (1) You; or (2) Any of your partners or 'members'; whether acting alone or in collusion with other persons." (Id., Ex. A at 4, Ex. B at 4.) However, a Tax-Deferred Exchange Endorsement to the Policies states that this exclusion "does not apply to losses involving the 'funds' of a 'client' while you are acting as a qualified intermediary in a tax-deferred exchange of property for such 'client' intended to qualify under Internal Revenue Code 1031." (Id., Ex. A at 16, Ex. B at 18.) The Policies are limited to "loss that you sustain through acts committed or events occurring at any time and discovered by you: (a) During the policy period shown in the Declarations; or (b) During the period of time provided in the Extended Period to Discovery Loss Condition E.1.j."[6] (Id., Ex. A at 7, Ex. B at 7.) "Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been or will be incurred, even though the exact amount or details of loss may not then be known." (Id.)

Terzakis and Estupinian stole exchange funds deposited with Vesta during the discovery period for the Policies issued by Plaintiff. (Counterclaim ¶ 5.) After taking the funds, Terzakis and Estupinian ran a "Ponzi scheme" by using funds from new exchangers to pay off older exchangers whose funds they had previously misappropriated. (Id. ¶¶ 25-38, 53.) The scheme collapsed in July 2008 when the real estate market cooled. (Id. ¶ 38.) Terzakis and Estupinian were indicted on conspiracy, fraud and money laundering charges on December 30, 2009. (Id., Ex. 1.) Ye was charged with fraud and money laundering in an information filed on January 19, 2010. (Id., Exs. 2-3.) Vesta did not notify Defendant of the

---

[6] Provision E.1.j extends the discovery period for 60 days beyond the policy period for most losses and by one year for losses related to employee benefit plans. (FAC, Ex. A at 7-8, Ex. B at 7-8.)

1  thefts during the discovery period because it was controlled by Terzakis and Estupinian, the
2  parties that caused the loss. (Id. ¶¶ 55-56.) Terzakis and Estupinian's ownership of Vesta
3  constituted adverse domination that tolled the time for discovering a loss and making a claim
4  until Counter-Claimant was appointed receiver. (Id.)

5  On or about February 13, 2009, Samuel Henka (a Vesta Exchanger) submitted a
6  claim to Plaintiff seeking payment and outlining the embezzlement of exchange funds by
7  Terzakis and Estupinian. (Counterclaim ¶ 68.) On June 1, 2009, Plaintiff entered into an
8  agreement with Terzakis to return the premium on the Policies in exchange for the rescission
9  of the $2 million dollar policies. (Id.) The payment of the premiums in exchange for the
10 rescission was a fraudulent conveyance made without adequate consideration and with the
11 intent by Terzakis and Plaintiff to hinder creditors. (Id. ¶ 69.)

12 On the basis of the allegations outlined above, Counter-Claimant alleges three causes of
13 action: (1) Declaratory Judgment; (2) Breach of Contract; and (3) Fraudulent Conveyance.

14 Presently before the Court is Plaintiff's Motion to Dismiss.

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973). However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its

4

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## IV. DISCUSSION

Plaintiff moves to dismiss on the ground that Counter-Claimant did not discover the asserted claims during the discovery period and the adverse domination doctrine does not apply to toll the discovery period. (Motion at 12-13.) Specifically, Plaintiff contends that Terzakis and Estupinian's knowledge of their own wrongdoing is insufficient to constitute "discovery" and that adverse domination does not apply because: (1) other non-wrongdoing employees could have discovered the loss; and (2) Vesta was a mere alter-ego of the wrongdoers, such that application of adverse domination would violate public policy.[7] (Id. at 15-18.) Counter-Claimant responds that Terzakis and Estupinian, and therefore Vesta, "discovered" the losses at the time they occurred and that Plaintiff's attempts to distinguish the adverse domination doctrine fail because: (1) whether non-wrongdoing employees could have discovered the loss must be explored through discovery; and (2) any "alter-ego" exception does not apply because the Policy was intended to benefit Vesta exchangers.[8] The Court addresses each of Plaintiff's contentions in turn.

---

[7] (Motion at 15-18; Reply in Support of United States Fire Insurance Company's Motion to Dismiss at 3, hereafter, "Reply," Docket Item No. 211.)

[8] (Receiver's Opposition to U.S. Fire's Motion to Dismiss the Counterclaim at 4, 9, hereafter, "Opp'n," Docket Item No. 203.)

5

### A. Wrongdoer "Discovery"

At issue is whether Counter-Claimant's allegation that Terzakis and Estupinian knew of the losses caused by their own misappropriation of exchanger funds during the discovery period is sufficient to allege "discovery" under the Policies.

"[U]nder fidelity bond and California law, 'discovery' occurs once an insured becomes aware of facts that would cause a reasonable person to assume a loss had been or would be incurred." Gulf USA Corp. v. Federal Ins. Co., 259 F.3d 1049, 1058 (9th Cir. 2001). "In other words, 'discovery of loss does not occur until the insured discovers facts showing that dishonest acts occurred and appreciates the significance of those facts; suspicion of loss is not enough.'" Id. (quoting Cal. Union Ins. Co. v. Am. Diversified Sav. Bank, 948 F.2d 556, 563 (9th Cir. 1991) (emphasis omitted)).

Counter-Claimant alleges in pertinent part:

> The U.S. Fire Enhanced Policies require that a loss giving rise to a claim must be discovered either (I) during the policy period, or (ii) during the period for extended discovery, which is 60 days beyond the cancellation or termination date of the policy.[] The Crime Policies state that "discovery" occurs "when you [the insured] first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been or will be incurred[.]"[] Once a loss is discovered, the insured is required to notify the carrier of the loss "as soon as possible."[] (Counterclaim ¶ 54 (footnotes omitted).)
> Terzakis, Estupinian and Ye became "aware" of the existence of covered losses at each time they embezzled Exchange funds for their own use. Their awareness of these facts persisted continuously throughout each of the relevant policy periods. (Counterclaim ¶ 55.)

The Policies state in pertinent part:

> f. Discovery
> (1) We will pay for loss that you sustain through acts committed or events occurring at any time and discovered by you:
> (a) During the policy period shown in the Declarations; or
> (b) During the period of time provided in the Extended Period To Discover Loss Condition E.1.j.

6

> (2) Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been or will be incurred, even though the exact amount or details of loss may not then be known. Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this policy.

(FAC, Ex. A at 7, Ex. B at 7.)

Based on the allegations above and the discovery provisions of the Policies, the Court finds that Counter-Claimant has not sufficiently alleged "discovery" under the Policies based on Terzakis and Estupinian's knowledge of their own wrongdoing. Counter-Claimant cites no authority for the proposition that a wrongdoer's knowledge of his or her own bad acts constitutes discovery under a commercial crime policy. Moreover, if an owner's knowledge of his or her own wrongdoing constituted "discovery" under a policy similar to those at issue here, the loss discovery provision would be effectively read out of the contract. Thus, the Court finds that Counter-Claimant's allegations regarding Terzakis and Estupinian's knowledge of their own misappropriation of client funds is not sufficient to allege "discovery" of a compensable loss by Vesta during the discovery period of the Policies.

**B.      Adverse Domination**

At issue is whether the adverse domination doctrine is applicable in the present case, or whether the presence of non-wrongdoing employees who could have discovered the loss or the alter-ego exception to the doctrine preclude its applicability.

Adverse domination is a form of equitable tolling applicable to discovery of loss provisions. Admiralty Fund v. Peerless Ins. Co., 143 Cal. App. 3d 379, 388 (Cal. Ct. App. 1983). Generally, courts strictly enforce discovery of loss provisions "so that neither difficulty in discovering insured losses nor employee concealment excuse the insured's performance." Id. at 384. However, a discovery of loss provision may be equitably tolled when a complaint alleges that "a claim arises from a director's or employee's defalcation and the wrongdoers' control makes discovery impossible . . . ." Id. at 387. In Admiralty, a mutual fund sued its insurance carrier for refusing to cover losses under a fidelity insurance contract that were caused by the wrongdoing of the mutual

fund's president and other high ranking officers. Id. at 381-82, 389. On appeal, the plaintiffs contended that the discovery period of the policy should have been equitably tolled because the wrongdoing parties adversely dominated the company to such an extent that non-wrongdoing employees could not have discovered the loss. Id. at 383. The California Court of Appeal recognized that "[a] mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund." Id. at 388 (quoting Tannenbaum v. Zeller, 552 F.2d 402, 405 (2d Cir. 1977)). "This near absolute control can place the shareholders of a mutual fund . . . in a position of incapacity, and may make discovery of any wrongdoing impossible." Id. Therefore, the court ruled that the discovery period was tolled because the company "could not have discovered the true cause of the losses, that is, the employees' dishonesty, until the wrongdoers relinquished control." Id.

### 1. Discovery by Non-Wrongdoing Employees

Plaintiff contends that adverse domination does not apply because, according to the Counterclaim, Ginny Estupinian, President of Vesta and allegedly a non-wrongdoing employee, was involved in "important corporate activities as [sic] procuring insurance," and therefore could have discovered the loss during the discovery period. (Motion at 15.) Counter-Claimant responds that there is insufficient evidence available to support or dispute Plaintiff's contention, which must be explored through discovery. (Opp'n at 9.)

The Ninth Circuit has refused to apply adverse domination where it was "not controverted that there were non-wrongdoing employees who could have discovered the losses prior to takeover." Cal. Union Ins. Co., 948 F.2d at 565.

Here, Counter-Claimant alleges in pertinent part:

> Terzakis and Estupinian (the "Thieves") first began working together in approximately March 2000, at which time they discovered the existence of the unregulated business of 1031 Exchange Accommodators, whereby large sums of money were held in trust for up to 180 days. With rising real estate prices, new escrows being opened on relinquished properties were sufficient to pay for the close of escrows on replacement properties, thus enabling them to divert Exchange Funds held in trust without detection by the Exchangers. (Counterclaim ¶ 25.)
> The Thieves formed Vesta in January 2004 to act as a QI for purposes of 1031 exchanges to enable them to engage in a pattern of self-dealing and misappropriation of

client trust assets. Other than Ye, Terzakis, and Estupinian, the employees at Vesta were unaware of the theft of Exchange Funds. Terzakis and Estupinian controlled the financial affairs of Vesta and exercised dominion over Vesta which incapacitated Vesta and precluded non-wrongdoing employees from discovering their crimes. (Counterclaim ¶ 26.)

Terzakis and Estupinian were able to hide their ongoing theft of Exchange Funds through the constant manipulation and transfer of funds from newer clients to older clients. As long as the new escrows on "relinquished" properties were sufficient to pay for the close of escrow on "replacement' [sic] properties, Terzakis and Estupinian could conceal their theft and cover up the deficit in Vesta's client trust account. (Counterclaim ¶ 53.)

Ginny Estupinian was employed by Vesta as its President and executed the applications for insurance for the two U.S. Fire Enhanced Policies. Ginny Estupinian has not been indicted or charged by the government for any crimes arising out of her employment at Vesta. In late 2007, Ginny Estupinian was sued by Terzakis for allegedly participating in the conversion of Exchange Funds with her husband. In response, Ginny Estupinian filed a counterclaim against Terzakis accusing Terzakis of the embezzlement of Exchange Funds. The date when Ginny Estupinian, as the President of Vesta, discovered the embezzlement of Exchange Funds by either Terzakis or Estupinian is uncertain. Regardless of the date when she discovered the embezzlement, once discovered, she acted adverse to Vesta to protect her husband. In late 2007, Ginny Estupinian was fired as the President of Vesata [sic] by Terzakis and escorted by security from the Vesta office in San Jose. (Counterclaim ¶ 16.)

Based on the allegations above and the discovery provisions of the Policies, the Court finds that the Counterclaim alleges sufficient facts to establish that non-wrongdoing employees at Vesta could not have discovered the embezzlement of funds by Terzakis and Estupinian. Significantly, Counter-Claimant alleges that Terzakis and Estupinian "exercised dominion over Vesta which incapacitated Vesta and precluded non-wrongdoing employees from discovering their crimes." (Counterclaim ¶ 26.) Although Ginny Estupinian was allegedly President of Vesta during the time at issue, Counter-Claimant further alleges that it is uncertain when she discovered the thefts and that she acted adverse to Vesta's interests when that discovery ultimately occurred. At this stage, such allegations are sufficient to establish that no non-wrongdoing employee of Vesta could have discovered the embezzlement during the discovery period. Plaintiff's dispute of these allegations is more appropriate to a motion for summary judgment.

Plaintiff's reliance on California Union and Gray & Associates for the principle that the adverse domination doctrine does not apply in this case due to the presence of non-wrongdoing employees is misplaced. (Motion at 15.) In California Union, the parties did not dispute that non-wrongdoing employees could have discovered the losses prior to the defendant bank's takeover by the Federal Savings and Loan Insurance Corporation. 948 F.2d at 565. In Gray & Associates, the

1  court determined on summary judgment that "[a]s of December 2004, there was ample evidence
2  available to [the receiver] Gray . . . that funds may have been misappropriated" and therefore it was
3  "simply unreasonable that Gray claims it did not discover the loss until January 2006." Gray &
4  Assocs., LLC v. Travelers Cas. & Sur. Co., No. CCB-07-2216, 2008 WL 822130, at *5 (D. Md.
5  Mar. 25, 2008). By contrast, Counter-Claimant alleges that Terzakis and Estupinian exercised
6  complete control over Vesta and that no non-wrongdoing employees could have discovered the loss
7  until Counter-Claimant was appointed as receiver. (Counterclaim ¶¶ 55-56.)

8  Accordingly, the Court DENIES Plaintiff's Motion to Dismiss on the issue of potential
9  discovery of the loss by non-wrongdoing employees.

### C. Alter-Ego Exception and Public Policy

Plaintiff contends that the adverse domination doctrine does not apply because Vesta is merely the alter-ego of the wrongdoers. (Motion at 14-15.) In particular, Plaintiff contends that the alter-ego "exception" to adverse domination applies because: (1) the sole shareholders have unclean hands and there are no minority shareholders to protect; and (2) it is contrary to public policy to permit Vesta's alter-egos to profit from their own wrongdoing. (Id.) Counter-Claimant responds that the issues raised by Plaintiff must be explored through discovery. (Opp'n at 9.)

Courts have recognized that the purpose of the adverse domination doctrine is not served where there are no minority interests such as shareholders or innocent investors to protect. See J.I. Corp. v. Federal Ins. Co., 920 F.2d 118, 119 (1st Cir. 1990); In re REA Exp., Inc., 412 F. Supp. 1239, 1257 n.45 (E.D. Pa. 1976); In re Payroll Exp. Corp., 216 B.R. 344, 359-60 (S.D.N.Y. 1997). More generally, the California Insurance Code states that a carrier "is not liable for a loss caused by the wilful act of the [policy holder]; but [it] is not exonerated by the negligence of the [policy holder], or of the [policy holder's] agents or others." Cal. Ins. Code § 533. Section 533 codifies the maxim that "[t]he basic function of the court is to see that no one takes advantage of his own wrong." Erlin-Lawler Enters., Inc. v. Fire Ins. Exch., 267 Cal. App. 2d 381, 385 (Cal. Ct. App. 1968). The Ninth Circuit has interpreted this principle to find that a principal officer and director

10

of a company cannot constitute an "employee" for purposes of a standard commercial crime policy. Cal. Union Ins. Co., 948 F.2d at 566.

In this case, the general policy that one should not be permitted to take advantage of his or her own wrong is not implicated by Counter-Claimant's adverse domination allegations. Should Counter-Claimant receive funds under the Policies for loss caused by Terzakis and Estupinian, Counter-Claimant is charged with maintaining a common fund for the payment of Vesta's creditors, including the exchangers from whom Terzakis and Estupinian stole.[9] Thus, the Court finds that allowing recovery in this case will not provide Terzakis and Estupinian with the opportunity to take advantage of their own wrongdoing.[10]

Plaintiff's authority interpreting the meaning of "employee" for purposes of a standard commercial crime policy does not alter the Court's findings. In California Union, the Ninth Circuit held that the principal officers and directors of the defendant bank did not constitute "employees" as that term was defined in a fidelity insurance contract, in part due to the "public policy against permitting a corporation to collect insurance for the defalcations of its alter ego." 948 F.2d at 566 (citing Kerr v. Aetna Cas. & Sur. Co., 350 F.2d 146, 154-55 (4th Cir. 1965)). Unlike the policy in California Union, the Tax-Deferred Exchange Endorsement of the Policies at issue expressly covers losses resulting from dishonest acts of the insured, Vesta, or its partners, Terzakis and Estupinian, involving Section 1031 exchange funds. As a result, in this case, any embezzlement of Section 1031 exchange funds by company principles was expressly covered by the Policies.

Accordingly, the Court DENIES Plaintiff's Motion to Dismiss on the issue of the alter-ego exception to the adverse domination doctrine.

---

[9] (Order Granting Motion to Appoint Receiver; Order Appointing Receiver at 3, Docket Item No. 123.)

[10] Notably, however, there remains a factual issue to be resolved as to whether the Section 1031 exchangers involved in this case are analogous to the shareholders aggrieved in Admiralty such that application of the adverse domination doctrine is appropriate. The Court reserves a deeper inquiry on this issue for summary judgment.

11

## V. CONCLUSION

The Court DENIES Plaintiff's Motion to Dismiss.

On **September 19, 2011 at 10 a.m.**, the parties shall appear for a Case Management Conference. On or before **September 9, 2011**, the parties shall file a Joint Case Management Statement. The Statement shall include, *inter alia*, a good faith proposed schedule as to how this case should proceed.

Dated: July 14, 2011

JAMES WARE
United States District Chief Judge

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Eileen King Bower eileen.bower@troutmansanders.com
Brian Patrick Cummings brian.cummings@troutmansanders.com
John R. Gerstein jack.gerstein@troutmansanders.com
Becki F. Kieffer becki.kieffer@troutmansanders.com
Robert Louis Brace rlbrace@hbsb.com
Peter Laurence Candy plcandy@hbsb.com
Michael P. Denver mpdenver@hbsb.com
Andrew B. Downs andy.downs@bullivant.com
Peter Roldan peter.roldan@bullivant.com
Norman Jorgen Ronneberg, Jrnorman.ronneberg@bullivant.com
Erik Fuehrer erik.fuehrer@dlapiper.com
Michael Gerald Schwartz michael.schwartz@dlapiper.com
Patric J. Kelly pjkelly@ahk-law.com
Kevin Richard Martin kevin@pattonmartinsullivan.com
Shawn Robert Parr shawn@parrlawgroup.com
James David Roberts jroberts@chennelsonroberts.com
Charles Edward Wheeler cwheeler@cozen.com

**Dated: July 14, 2011**                              **Richard W. Wieking, Clerk**

                                                      **By:   /s/ JW Chambers
                                                             Susan Imbriani
                                                             Courtroom Deputy**