Robert L. Brace, SBN 122240
1807 Santa Barbara Street
Santa Barbara, CA 93101
Telephone: (805) 845-8211
Cell: (805) 886-8458
rlbrace@rusty.lawyer
Attorney for Thomas A. Dillon, as Court-Appointed
Receiver for Vesta Strategies, LLC and Excalibur Group, LLC

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, a corporation,<br><br>Plaintiff<br><br>v.<br><br>VESTA STRATEGIES, LLC<br><br>Defendant | **Case No.: 5:09-02388 EJD**<br><br>**Related cases 5:10-cv-05238 EJD and 5:14-cv-01908 BLF**<br><br>**ORDER AUHORIZING DISTRIBUTION OF FUNDS, APPROVING FINAL ACCOUNTING AND DIRECTING THE CLOSURE OF THE RECEIVERSHIP ESTATE** |

As set out in Docket No. 123, Thomas A. Dillon is the Court-Appointed Receiver for Vesta Strategies, LLC ("Vesta") and Excalibur 1031 Group, LLC ("Excalibur") (collectively, "Dillon").

On April 4, 2019, Dillon appeared before the court with his counsel Robert L. Brace ("Brace") to present Dillon's motion asking the court to authorize him to make various payments of fees and costs to himself and his lawyers, to distribute the remaining funds held in trust to the IRC § 1031 Exchange creditors of Vesta, to approve of Dillon's final accounting, to approve of Dillon's prior settlements and distributions, and to terminate the Receivership.

1

Having thoroughly reviewed the submissions, on April 4, 2019 the Court directed Dillon to submit a revised Order which: (i) deleted $1,894 in litigations expenses from Brace's cost bill; (ii) recalculated Brace's 25% net contingency fee based on reduced costs; (iii) deleted $1,020 in fees from Dillon's fee application; (iv) set forth the proposed use of funds to be retained by Dillon to wind up the affairs of the Receivership; and (v) recalculated the amounts to be distributed to the Exchangers based upon the Courts directed revisions which increased their collective Wave V distribution by $2,440 from $2,105,000 to $2,107,440.

NOW THEREFORE, the Court GRANTS Dillon's Motion. The Court ORDERS that Dillon is authorized and directed to distribute the **$3,679,708.78** remaining in the Qualified Settlement Fund to himself, his legal professionals and the §1031 Exchange creditors as follows:

1) $109,175 to Dillon for payment of the Receiver's unpaid fees;
2) $2,275 to Dillon for payment of the Receiver's unreimbursed costs;
3) $23,532 to Robert L. Brace for payment of unreimbursed litigation costs;
4) $869,117 to Robert L. Brace for payment of a 25% net contingency fee on the $3.5 million settlement with the confidential insurer;
5) $21,842 to Gilbert LLP for payment of unreimbursed appellate costs;
6) $525,107 to Gilbert LLP for payment of appellate fees;
7) $21,220.78 to Dillon as incurred for fees and costs to close the estate; and
8) $2,107,440 to the §1031 Exchange creditors of Vesta.

**Total: $ 3,679,708.78**

Dillon is ORDERED to make the following payments to the §1031 Exchange creditors of Vesta in a Wave V distribution of $2,107,440:

| | | |
|---|---|---|
| **Alonso** | | $ 80,850 |
| **Bunya** | | $ 54,143 |
| **Chaffee** | | $ 51,073 |
| **Chen** | | $ 59,271 |
| **Farhadi** | | $ 33,328 |
| **Henka** | | $ 147,778 |
| **Kao** | | $ 258,678 |
| **Kendrick** | | $ 23,054 |
| **Pappas** | | $ 416,742 |
| **Sakai** | | $ 54,145 |
| **Schultz (Carteret)** | | $ 153,535 |
| **Simmons** | | $ 296,102 |
| **Simpson 1 Darren** | | $ 8,232 |
| **Simpson 2 Peggy** | | $ 93,407 |
| **Spagnola** | | $ 7,050 |
| **Tate** | | $ 28,792 |
| **Tezel (Supra Color)** | | $ 44,322 |
| **Walsh** | | $ 296,938 |
| Totals | **TOTAL:** | **$2,107,440** |

The Court APPROVES Dillon's final accounting as the Receiver. Dillon was appointed Receiver on December 16, 2009 (Dkt. 123). At the inception of his appointment, the estate contained no cash but owned numerous choses in action against insurers and third party tort feasors. Dillon has monetized Vesta's assets and recovered over $14.8 million to pay approximately $12.6 million in damages arising out of the theft of trust assets. The money collected by Dillon was used by Dillon and will be used by Dillon to recharge the Vesta trust account and pay the beneficiaries of the IRC § 1031 trusts. After the payment of expenses, the payout to trust fund creditors will be over 80% of the trust debts owed by Vesta.

Dillon previously distributed $8,195,088.04 to the Vesta and Excalibur exchangers ("Exchangers" or "§1031 Exchangers"), or approximately 65% of their losses. Currently, the estate owes $4,454,763 in trust liabilities. Dillon retains $3,679,708.78 in the Qualified Settlement Fund ("QSF") on deposit at Northern Trust. After Dillon distributes $2,107,440 to the §1031 Exchangers as ORDERED above, the estate will still owe the trust beneficiaries $2,347,323.

The total attorney and Receiver fees and costs incurred (approximately $4.6 million) represents 31% of the total amount recovered by Dillon which was $14,887,164.73. The

3

Receivership has been successful, and Dillon has faithfully discharged his duties to the Court pursuant to the charges in his appointment.

Dillon retained Robert L. Brace and Hollister & Brace, APC on July 22, 2010 pursuant to a 25% contingency fee agreement which was approved by the Court (Dkts. 185 and 188). Dillon paid $2,668,539.45 to Hollister & Brace, APC ("H&B") pursuant to the court approved 25% contingency fee and $187,459.83 to reimburse H&B for litigation costs the firm incurred in the prosecution of the various actions.

Robert L. Brace ("Brace") left his employment at H&B in October 2014. Dillon transferred representation from H & B to Robert L. Brace and thereafter continued to use Robert Brace as the attorney for the Receivership estate. Dillon paid Robert L. Brace $96,489.67 in fees and $14,923.10 in costs on a $412,500 confidential legal malpractice settlement. Dillon's prior payments to H & B and Robert L. Brace are approved.

The estate still owes Robert L. Brace $869,117 in contingency fees and $23,532 in costs arising out of a $3.5 million confidential settlement with an insurer who executed a $5 million fidelity bond to Vesta. The Court approves the payment of Robert L. Brace's fees and expenses incurred in the insurance coverage action and directs Dillon to make the payments from the QSF.

Dillon retained Richard Shore of Gilbert LLP on June 3, 2014 to prosecute the appeal of an adverse judgment entered in favor of Continental Casualty Company. The fee agreement (attached as Exhibit 4 to Dillon's Declaration) provided that Dillon would pay Gilbert LLP two times the firm's hourly rate because there were insufficient assets in the estate to pay professional fees and costs as they were incurred. Gilbert LLP has agreed to waive the multiplier, therefore Dillon owes Gilbert LLP $525,107 in hourly fees and $21,842 in costs prosecuting the successful appeal against Continental Casualty to the Ninth Circuit in *Dillon v. Continental,* Case No.14-15802. The Court approves the payment of Gilbert LLP's fees and expenses and directs Dillon to pay Gilbert LLP from the QSF.

The total amount of Dillon's fees to date is $149,175 at $300 per hour as set out in Exhibit 6 to Dillon's Declaration with the $1,020 deduction ordered by the court at the hearing. Dillon paid himself $40,000 in Receiver fees and is therefore owed $109,175, plus $2,275 in unreimbursed costs. The Court approves the payment of Dillon's fees and costs and grants him permission to retain $21,220.78 in the QSF to pay for fees and costs to close the estate without a further accounting.

4

**ORDER GRANTING MOTION AUHORIZING DISTRIBUTION OF FUNDS, APPROVING FINAL ACCOUNTING AND DIRECTING THE CLOSURE OF THE RECEIVERSHIP ESTATE**

The $21,220.78 held back by Dillon will be used to pay for his time dedicated to communicating with and paying the 1031 Exchangers their final distributions as ordered by this court, paying document storage fees of approximately $3,200 per year for three more years, paying for the destruction of the documents of approximately $3,000, paying the fees incurred by Dillon in monitoring the document destruction and other ancillary matters that naturally arise from closing a Receivership.

An accounting prior to any requested distributions of the money remaining in trust ($3,679,708.78) is set forth below. Copies of the bank records from Northern Trust showing the debits and credits for the accounting below are attached to Dillon's Declaration as Exhibit 1 and are before this Court. The Court APPROVES Dillon's accounting as follows:

**Income**
| | |
|---|---|
| Misc. Asset Recovery | $18,235.17 |
| Litigation Settlements | $14,862,500.00 |
| Terzakis Payments | $6,429.56 |
| **Total Income** | **$14,887,164.73** |

**Expenses**
| | |
|---|---|
| Exchanger Payments in 4 Waves | $8,195,088.04 |
| H&B Fees paid | $2,668,539.45 |
| H&B Expenses paid | $187,459.83 |
| Brace Fees paid | $96,489.67 |
| Brace Expenses paid | $14,923.10 |
| Dillon Fees paid | $40,000.00 |
| Dillon Expenses paid | $2,542.95 |
| Bank fees, insurance, misc. | $2,412.91 |
| Money in QSF Trust | $3,679,708.78 |
| **Total Expenses** | **$14,887,164.73** |

The court approves the following recoveries obtained by Dillon as the Receiver:

| Settling Party | Settlement Amount |
|---|---|
| Large Chicago Law Firm (confidential) | $7,050,000 |
| U.S. Fire (surety bond) | $ 750,000 |
| Merrill Lynch | $1,900,000 |
| Chicago Bank (confidential) | $1,250,000 |
| Small Chicago law firm (confidential) | $ 412,500 |
| Insurer (surety bond) (confidential) | $3,500,000 |
| **Total** | **$14,862,500** |

5

Dillon calculated the §1031 Exchangers claims based on the financial information produced to him by the 1031 Exchangers, the Vesta bank records, interviews of John Terzakis and Peter Ye by Dillon's lawyers and Terzakis' sworn declaration which admitted the debt owed by Vesta to the Exchangers. The Court APPROVES of Dillon's claims adjudication process identifying the debt owed by Vesta to the Exchange trust to be paid to the §1031 Exchangers, as ascertainable beneficiaries of the trust. The adjudicated gross trust claims payable by Dillon are APPROVED as follows:

| Approved Claim Amt. | Exchanger Name |
|---|---|
| $485,300.45 | Alonso |
| $325,000.00 | Bunya |
| $306,564.82 | Chaffee |
| $355,778.24 | Chen |
| $200,056.70 | Farhadi |
| $887,035.00 | Henka |
| $1,552,712.95 | Kao |
| $138,390.43 | Kendrick |
| $2,501,487.01 | Pappas |
| $325,000.00 | Sakai |
| $921,557.27 | Schultz (Carteret) |
| $1,777,350.60 | Simmons |
| $49,410.93 | Simpson 1 Darren |
| $560,677.97 | Simpson 2 Peggy |
| $42,291.19 | Spagnola |
| $172,825.04 | Tate |
| $266,045.75 | Tezel (Supra Color) |
| $1,782,366.61 | Walsh |
| **$12,649,851.00** | **TOTAL** |

The $12,649,851.00 in Court approved claims does not include $6.5 million in subrogation claims submitted to Dillon by Arch Insurance and the law firm, Ansell Zaro Grimm & Aaron. These two subrogation claims are general creditor debts owed by Vesta. General creditor claims will not be paid by the Receiver because Vesta has no assets of its own to pay the claims of general creditors. The Court approves of Dillon's decision that the Exchangers' trust claims must be paid in full before the payment of general creditors' claims and there are insufficient assets to pay all the trust claims at the close of the Receivership.

**ORDER GRANTING MOTION AUHORIZING DISTRIBUTION OF FUNDS, APPROVING FINAL ACCOUNTING AND DIRECTING THE CLOSURE OF THE RECEIVERSHIP ESTATE**

From the recoveries obtained by Dillon, the Court APPROVES of the prior 4 "Waves" of distributions Dillon made to the 1031 Exchangers totaling **$8,195,088** as follows:

| Exchanger Name | Payment Amt. Issued on 08/10/12 Wave I | Payment Amt. Issued on 12/14/12 Wave II | Payment Amt. Issued on 1/14/13 Wave III | Payment Amt. Issued 12/20/2016 Wave IV |
|---|---|---|---|---|
| **Alonso** | $213,400.44 | $54,154.00 | $35,737.72 | $11,105.20 |
| **Bunya** | $142,911.76 | $36,266.30 | $23,933.13 | $7,437.04 |
| **Chaffee** | $134,805.29 | $34,209.10 | $22,575.55 | $7,015.18 |
| **Chen** | $156,445.83 | $39,700.80 | $26,199.65 | $8,141.34 |
| **Farhadi** | $87,970.63 | $22,324.00 | $14,732.25 | $4,577.94 |
| **Henka** | $390,054.57 | $98,983.00 | $65,321.61 | $20,298.20 |
| **Kao** | $682,772.14 | $173,265.00 | $114,342.39 | $35,531.04 |
| **Kendrick** | $60,854.22 | $15,442.80 | $10,191.13 | $3,166.82 |
| **Pappas** | $1,099,975.13 | $279,137.40 | $184,210.49 | $57,242.03 |
| **Sakai** | $142,911.76 | $36,266.30 | $23,933.13 | $7,437.04 |
| **Schultz (Carteret)** | $405,235.00 | $102,835.30 | $67,863.84 | $31,088.18 |
| **Simmons** | $781,551.72 | $198,332.00 | $130,884.80 | $40,671.47 |
| **Simpson, Darren** | $21,727.39 | $5,513.70 | $3,638.64 | $1,130.68 |
| **Simpson, Peggy** | $246,546.08 | $62,565.30 | $41,288.55 | $12,830.11 |
| **Spagnola** | $18,596.64 | $4,719.20 | $3,114.34 | $967.76 |
| **Tate** | $75,996.10 | $19,285.30 | $12,726.00 | $3,954.79 |
| **Tezel (Supra Color)** | $116,987.90 | $29,687.70 | $19,591.71 | $6,087.98 |
| **Walsh** | $783,757.40 | $198,891.80 | $131,254.18 | $40,786.25 |
| **TOTALS** | **$5,562,500.00** | **$1,411,579.00** | **$931,539.11** | **$289,469.05** |

Dillon obtained voluminous documents to prosecute the litigation and the claims asserted against others. The Court ORDERS Dillon to retain the hard copy documents held in storage for three years from the date of this order terminating the Receivership. Dillon shall destroy the stored documents in three years after entry of the order.

Dillon collected $14,862,500 from adverse third parties to pay $12,649,851.00 in stolen trust funds. Dillon has not identified any other potential defendants to sue to pay the remaining $2,347,323 debt owed by Vesta to the trust beneficiaries. The $2,347,323 debt will remain unpaid. The Court ORDERS Dillon to comply with the mandates of this ORDER and close the estate. The Receivership is hereby terminated.

**IT IS SO ORDERED.**

DATED: April 9, 2019

**EDWARD J. DAVILA**
**United States District Judge**

7

**ORDER GRANTING MOTION AUHORIZING DISTRIBUTION OF FUNDS, APPROVING FINAL ACCOUNTING AND DIRECTING THE CLOSURE OF THE RECEIVERSHIP ESTATE**